# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| In re: ) | |
| ) | |
| KNIGHT-CELOTEX, LLC, an Illinois ) | Case No. 09-12200 |
| limited liability company, and ) | Chapter 7 |
| ) | |
| KNIGHT INDUSTRIES I LLC, a Delaware ) | Case No. 09-12219 |
| limited liability company, ) | Chapter 7 |
| ) | |
| Debtors. ) | Hon. Pamela S. Hollis |

### ORDER (A) APPROVING THE SALE OF CERTAIN ASSETS OF DEBTORS; (B) APPROVING THE SALE OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS; AND (C) GRANTING CERTAIN RELATED RELIEF

Upon the motion (the "*Motion*") of Barry A. Chatz, not individually, but solely as the chapter 7 Trustee (the "*Trustee*") for the estates of Knight-Celotex, LLC and Knight Industries I LLC (collectively, the "*Debtors*"), for entry of an order pursuant to 11 U.S.C. §§ 105, 363, and 365 and Fed. R. Bankr. P. 2002, 6004, and 6006: (A) approving the sale (the "*Sale*") of certain of the Debtors' personal property and equipment located at their manufacturing facility in Sunbury, Pennsylvania (the "*Sunbury Assets*"); and (B) approving the Sale free and clear of liens, claims, and encumbrances; and the Court having reviewed the Motion and having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors and other parties in interest; and it appearing that notice of the Motion was good and sufficient under the particular circumstances and that no other or further notice need be given; and after due deliberation thereon; and good and sufficient cause appearing therefore, it is hereby,

**FOUND AND DETERMINED THAT**[1]

A. **Jurisdiction and Venue**. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(B)(2)(a). Venue of these chapter 7 cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B. **Statutory Predicates**. The statutory predicates for the relief sought in the Motion are sections 105 and 363 of the Bankruptcy Code, and Fed. R. Bankr. P. 2002, 6004, 6006 and 9014.

C. **Petition Date and Conversion to Chapter 7**. On April 6, 2009 (the "*Petition Date*"), each of the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "*Bankruptcy Code*") in this Court. On June 11, 2009, the Debtors' cases were converted to cases under chapter 7 of the Bankruptcy Code. Shortly thereafter, Barry A. Chatz was appointed as the Trustee. On June 17, 2009, pursuant to Court order, the Trustee was authorized to operate the Debtors' business pursuant to section 721 of the Bankruptcy Code, for the primary purpose of effectuating a sale of substantially all of the Debtors' assets as a going concern. The Trustee's authority to operate the Debtors' business terminated on November 30, 2009.

D. **Receivership of Sunbury Property LLC**. The Sunbury Assets are located on real property (the "*Real Property*") owned by Sunbury Property LLC, a non-debtor affiliate of the Debtors. In a receivership proceeding pending in the United States District Court for the Northern District of Illinois (the "*District Court*"), David M. Baker was appointed the receiver (the "*Receiver*") for the assets of Sunbury Property LLC – including the Real Property. By

---

[1]   Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Fed. R. Bankr. P. 7052.

2

separate motion to the District Court, the Receiver has sought approval of the sale of the Real Property. This Order pertains solely to the Trustee's sale of the Sunbury Assets.

E. **Notice**. As evidenced by the affidavits of service previously filed with the Court, and based on the representations of counsel at the Sale Hearing, (i) proper, timely, adequate and sufficient notice of (a) the Motion, (b) the Sale Hearing, and (c) the Sale (collectively, the "*Requested Relief*"), has been provided in accordance with sections 102(1) and 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9014; (ii) such notice was good and sufficient, and appropriate under the particular circumstances, including, without limitation, with respect to parties or entities that may have claims against the Debtors, but whose identities are not reasonably ascertainable by the Trustee, and (iii) no other or further notice of the Requested Relief is or shall be required. The disclosures made by the Trustee concerning the Requested Relief were good, complete and adequate.

F. **Initial Offer of Green Reclamation Group**. On January 6, 2010, the Trustee, the Receiver, and Green Reclamation Group, LLC executed a Property Purchase Agreement (the "*GRG Agreement*"), pursuant to which GRG agreed to purchase the Sunbury Assets and the Real Property for an aggregate cash consideration of $400,000 plus the assumption of up to $375,000 in liens on the Real Property. Pursuant to the Motion, the Trustee sought the approval of the sale of the Sunbury Assets to GRG, subject to higher and better offers.

G. **Receipt of Competing Bid and Auction**. Shortly prior to the first hearing on the Motion on January 26, 2010, ScrapTrade, LLC (and/or a NEWCO affiliate) ("*ScrapTrade*") submitted a competing bid for the Sunbury Assets in the amount of $475,000. In light of this competing bid, at the January 26, 2010 hearing, the Trustee and the Receiver requested that an auction (the "*Auction*") be conducted so as to ensure that the highest and best price for the

3

Sunbury Assets would be received. The auction was commenced on the afternoon of January 26, 2010, with the sole bidders being GRG and ScrapTrade. At the conclusion of the Auction, the Trustee and the Receiver determined that ScrapTrade was the winning bidder for the Sunbury Assets, having made a bid in the amount of $925,000 cash (with $900,000 allocated to the Sunbury Assets, and $25,000 allocated to the Real Property) plus the assumption of up to $375,000 in liens on the Real Property, and the Trustee and the Receiver executed a Property Purchase Agreement ("*PPA*") with ScrapTrade for the sale of the Sunbury Assets and the Real Property. Accordingly, the Trustee seeks this Court's approval for the sale of the Sunbury Assets, free and clear of liens, claims and encumbrances, to ScrapTrade.

H. **Opportunity to Object**. A fair and reasonable opportunity to object or be heard with respect to the Requested Relief has been afforded to all interested persons and entities, including, without limitation: (i) those persons filing notices of appearance or requests for notice under Bankruptcy Rule 2002 in these chapter 7 cases; (ii) the Office of the United States Trustee for the Northern District of Illinois; (iii) counsel for Bank of America, N.A. ("*BofA*"); (iv) GRG and counsel for GRG; (v) all entities known to have expressed an interest in a transaction with respect to any of the Sunbury Assets during the past year; (vi) all Governmental Entities and taxing authorities having or asserting jurisdiction over the Debtors or any of the Sunbury Assets; and (vii) parties asserting Encumbrances on any of the Sunbury Assets.

I. **Sale in Best Interest**. Consummation of the Sale of the Sunbury Assets at this time is in the best interests of the Debtors, their creditors, their estates, and other parties in interest.

J. **Business Justification**. Sound business reasons exist for the Sale and the other Requested Relief. Entry into the PPA constitutes the Trustee's exercise of sound business

judgment and such act is in the best interests of the Debtors, their estates, and all parties in interest. The Court finds that the Trustee has articulated good and sufficient business reasons justifying the Sale and the Requested Relief. Such business reasons include, but are not limited to, the following: (i) the PPA constitutes the highest and best offer for the Sunbury Assets; and (ii) the PPA and the closing thereon will present the best opportunity to realize the value of the Sunbury Assets and avoid decline and devaluation of the Sunbury Assets.

K. **Arm's Length Sale**. The PPA was negotiated, proposed and entered into by the Trustee and ScrapTrade without collusion, in good faith, not by any means forbidden by law and from arm's length bargaining positions. Neither the Trustee nor ScrapTrade have engaged in any conduct that would cause or permit the PPA to be avoided under 11 U.S.C. § 363(n).

L. **Good Faith Purchaser**. ScrapTrade is a good faith purchaser under 11 U.S.C. § 363(m) and, as such, is entitled to all of the protections afforded thereby. ScrapTrade will be acting in good faith within the meaning of 11 U.S.C. § 363(m) in closing the transactions contemplated by the PPA at all times after the entry of this Order.

M. **Consideration**. Previously, and as set forth in this Court's order of October 6, 2009 approving the sale of a substantial portion of the Debtors' assets to MFC Acquisition, Inc., the Trustee conducted a Sale process in accordance with, and have otherwise complied in all respects with, the Bidding Procedures Order entered by this Court on September 17, 2009. The Auction process set forth in the Bidding Procedures Order afforded a full, fair and reasonable opportunity for any Person to make a higher or otherwise better offer to purchase the Sunbury Assets, but no Qualified Bids were received for the Sunbury Assets by the Bid Deadline. Accordingly, the Trustee engaged in an additional marketing effort with respect to the Sunbury Assets, which resulted in the signing of a purchase agreement with GRG and the filing of this

Motion. Upon receiving a competing bid for the Sunbury Assets from ScrapTrade, the Trustee and the Receiver proposed that an Auction be conducted involving GRG and ScrapTrade. This Auction resulted in ScrapTrade being named the highest and best bidder for the Sunbury Assets. The consideration provided by ScrapTrade for the Sunbury Assets pursuant to the PPA (i) is fair and reasonable, (ii) is the highest and best offer for the Sunbury Assets, (iii) will provide a greater recovery for the Debtors' creditors than would be provided by any other practical available alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia.

N. **Free and Clear**. ScrapTrade would not have entered into the PPA and would not consummate the transactions contemplated thereby if the Sale of the Sunbury Assets to ScrapTrade were not free and clear of all liens, claims, interests or encumbrances of any kind or nature whatsoever (collectively, "*Encumbrances*"), or if ScrapTrade would, or in the future could be liable for any of such Encumbrances. The Trustee may sell the Sunbury Assets free and clear of all Encumbrances because, with respect to each creditor asserting an Encumbrance, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those holders of liens, claims, interests or Encumbrances who did not object or withdrew objections to the Sale are deemed to have consented to the Sale pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of liens, claims, interests or Encumbrances who did object fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code.

O. **Prompt Consummation**. The Sale of the Sunbury Assets must be approved and consummated promptly in order to preserve the value of the Sunbury Assets. Therefore, time is

of the essence in consummating the Sale, and the Trustee and ScrapTrade intend to close the Sale as soon as possible. Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs entry of judgment as set forth herein.

P. **No Fraudulent Transfer**. The PPA was not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code and under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia. The consideration under the PPA provided by ScrapTrade is the highest and otherwise best offer received by the Trustee, and such consideration constitutes reasonably equivalent value for the Sunbury Assets under the Bankruptcy Code and other applicable law.

Q. **ScrapTrade Not Insider**. ScrapTrade was not and is not an "insider" or "affiliate" of the Debtors, as those terms are defined in section 101 of the Bankruptcy Code, and no common identity of incorporators, directors or stockholders exist between ScrapTrade and the Debtors. Pursuant to the PPA, ScrapTrade is not purchasing all of the Debtors' assets, and ScrapTrade is not holding itself out to the public as a continuation of the Debtors. The Sale does not amount to a consolidation, merger or de facto merger of ScrapTrade and the Debtors and/or the Debtors' estates, there is not substantial continuity between ScrapTrade and the Debtors, there is no continuity of enterprise between the Debtors and ScrapTrade, ScrapTrade is not a mere continuation of the Debtors or the Debtors' estates, and ScrapTrade does not constitute a successor to the Debtors or the Debtors' estates to the extent allowed under state law.

R. **Legal, Valid Transfer**. The transfer of the Sunbury Assets to ScrapTrade will be a legal, valid, and effective transfer of the Sunbury Assets, and will vest ScrapTrade with all right, title, and interest of the Debtors to the Sunbury Assets free and clear of all Encumbrances.

It is therefore **ORDERED, ADJUDGED, AND DECREED THAT:**

**General Provisions**

1. The Motion is GRANTED, as further described herein.

2. All objections and responses to the Motion or the relief requested therein are resolved in accordance with the terms of this Order, and to the extent any such objection or response has not otherwise been withdrawn, waived, or settled as provided herein (and all reservations of rights included therein), are overruled on the merits and denied with prejudice.

**Approval of the Sale of the Sunbury Assets**

3. The PPA, and all of the terms and conditions therein, is hereby approved.

4. Pursuant to 11 U.S.C. § 363(b), the Sale of the Sunbury Assets to ScrapTrade free and clear of all Encumbrances, and the transactions contemplated thereby are approved in all respects.

5. Except as otherwise specifically provided in the PPA, ScrapTrade shall not be liable for any claims against the Trustee, the Debtors or any of their predecessors or affiliates, and ScrapTrade shall have no successor or vicarious liabilities of any kind or character whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, with respect to the Trustee, the Debtors or any obligations of the Debtors arising prior to the Closing Date, including, but not limited to, liabilities on account of any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the Sunbury Assets prior to the Closing Date.

6. The transactions contemplated by the PPA are undertaken by ScrapTrade in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale to ScrapTrade, unless such authorization is duly stayed pending such appeal. ScrapTrade is a purchaser in good faith of the Sunbury Assets, and is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

7. Pursuant to 11 U.S.C. § 363(b), the Trustee is hereby authorized to sell the Sunbury Assets to ScrapTrade and consummate the Sale in accordance with and subject to the terms and conditions of the PPA, and to transfer and assign all right, title and interest (including common law rights) to all property, licenses and rights to be conveyed in accordance with and subject to the terms and conditions of the PPA. The Trustee is further authorized to execute and deliver, and is empowered to perform under, consummate and implement, the PPA, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the PPA, including without limitation the related documents, exhibits and schedules, for the purposes of assigning, transferring, granting, conveying and conferring to ScrapTrade or reducing to possession, the Sunbury Assets, or as may be necessary or appropriate to the performance of the Trustee's obligations as contemplated by the PPA. The Parties shall have no obligation to proceed with the Closing of the PPA until all conditions precedent to their obligations to do so as set forth therein have been satisfied or waived.

**Transfer of Sunbury Assets**

8. Pursuant to 11 U.S.C. § 363(b) and 363(f), the Sunbury Assets shall be transferred to ScrapTrade upon consummation of the PPA (the "*Closing Date*") free and clear of all Encumbrances of any kind or nature whatsoever with all such Encumbrances of any kind or nature whatsoever to attach to the net proceeds of the Sale in the order of their priority, with the same validity, force and effect which they now have as against the Sunbury Assets, subject to any claims and defenses the Trustee may possess with respect thereto.

9. All entities that are presently, or on the Closing Date may be, in possession of some or all of the Sunbury Assets are hereby directed to surrender possession of the Sunbury Assets to ScrapTrade on the Closing Date.

10. Except as expressly permitted or otherwise specifically provided by the PPA or this Order, all persons and entities, including, but not limited to, all members of the Debtors, security holders, governmental, tax, and regulatory authorities, lenders, trade and other creditors, holding Encumbrances of any kind or nature whatsoever against or in the Debtors or the Sunbury Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtors, the Sunbury Assets, or the transfer of the Sunbury Assets to ScrapTrade, hereby are forever barred, estopped, and permanently enjoined from asserting against ScrapTrade, its successors or assigns, its property, or the Sunbury Assets, such persons' or entities' Encumbrances on and after the Closing Date of the Sale.

11. Subject to the terms and conditions of this Order, the transfer of the Sunbury Assets to ScrapTrade pursuant to the PPA constitutes a legal, valid, and effective transfer of the Sunbury Assets, and shall vest ScrapTrade with all right, title, and interest of the Debtors in and

to the Sunbury Assets free and clear of all Encumbrances of any kind or nature whatsoever, with any such Encumbrances to attach to the proceeds of the Sale.

12. In accordance with the PPA, ScrapTrade is hereby authorized in connection with the consummation of the Sale to allocate the Sunbury Assets among its Affiliates, and to assign, sublease, sublicense, transfer or otherwise dispose of any of the Sunbury Assets to its Affiliates, with such Affiliates having all of the rights and protections accorded under this Order and the PPA.

**GRG Release**

13. Concurrently with the Closing Date, payment to GRG shall be made from the proceeds of the Sale in the amount of $20,000 (the "*GRG Payment*"). The GRG Payment shall be deemed to be in satisfaction of any and all obligations of the Trustee under the GRG Agreement, but shall not be deemed an admission by the Trustee of a breach of the GRG Agreement. Upon receipt of the GRG Payment, GRG shall be deemed to have released, waived, and discharged the Debtors, the Debtors' estates, and the Trustee and his successors, agents, and retained professionals from any and all liabilities, obligations, actions, suits, judgments, claims, causes of action and demands, known or unknown, whatsoever at law or in equity arising from, in connection with or related to the GRG Agreement, the Motion, the Auction, or these chapter 7 cases.

**Additional Provisions**

14. The consideration provided by ScrapTrade for the Sunbury Assets under the PPA shall be deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia,

15. The consideration provided by ScrapTrade for the Sunbury Assets under the PPA is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code.

16. This Order (a) shall be effective as a determination that, on the Closing Date, all Encumbrances of any kind or nature whatsoever existing as to the Debtors or the Sunbury Assets prior to the Closing Date shall attach to the proceeds of the Sale, and (b) shall be binding upon and shall govern the acts of all entities including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Sunbury Assets.

17. Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the PPA.

18. ScrapTrade shall have no liability or responsibility for any liability or other obligation of the Trustee or the Debtors arising under or related to the Sunbury Assets other than otherwise expressly provided for in the PPA and this Order. Without limiting the generality of the foregoing, and except as otherwise specifically provided herein and in the PPA, ScrapTrade shall not be liable for any Claims (as such term is defined in section 101(5) of the Bankruptcy Code) against the Debtors or any of their predecessors or affiliates, and ScrapTrade shall have no successor liabilities of any kind or character, including, but not limited to, any theory of antitrust, products liability, environmental, successor or transferee liability, labor or civil rights law,

ERISA law, federally protected right, de facto merger or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereinafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated, with respect to the Trustee, the Debtors or any obligations of the Debtors arising prior to the Closing Date, including, but not limited to, liabilities on account of any taxes arising, accruing, or payable under, out of, or in connection with, or in any way relating to the operation of the business prior to the Closing Date.

19. Effective upon the Closing Date, and except as otherwise expressly provided for in the PPA, persons and entities are forever prohibited and enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or in equity, in any judicial, administrative, arbitral or other proceeding against ScrapTrade, its successors and assigns, or the Sunbury Assets, with respect to any successor liability, including, without limitation, the following actions: (i) commencing or continuing in any manner any action or other proceeding against ScrapTrade, its successors and assigns, assets or properties; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against ScrapTrade, its successors and assigns, assets or properties; (iii) creating, perfecting or enforcing any Encumbrances against ScrapTrade, its successors and assigns, assets or properties; (iv) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due ScrapTrade or its successors and assigns; (v) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Order or other orders of the Court, or the agreements or actions contemplated or taken in respect thereof; or (vi) revoking, terminating of failing or refusing to issue or renew any license, permit or authorization to operate any of the Sunbury Assets or conduct any of the businesses operated with the Sunbury Assets.

20. Under no circumstances shall ScrapTrade be deemed a successor of or to the Trustee or the Debtors for any Encumbrance against or in the Debtors or the Sunbury Assets of any kind or nature whatsoever. The sale, transfer, assignment and delivery of the Sunbury Assets shall not be subject to any Encumbrances against or in the Debtors, and such Encumbrances of any kind or nature whatsoever shall remain with, and continue to be obligations of, the Debtors. All persons holding Encumbrances against or in the Debtors or the Sunbury Assets of any kind or nature whatsoever shall be, and hereby are, forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing such Encumbrances of any kind or nature whatsoever against ScrapTrade, its property, its successors and assigns, or the Sunbury Assets with respect to any Encumbrance of any kind or nature whatsoever such person or entity had, has, or may have against or in the Debtors, their estates, officers, directors, shareholders, or the Sunbury Assets. Following the Closing Date, no holder of an Encumbrance in or against the Debtors shall interfere with ScrapTrade's title to or use and enjoyment of the Sunbury Assets based on or related to such Encumbrance, or any actions that the Trustee may take in the Debtors' chapter 7 cases.

21. ScrapTrade has given substantial consideration under the PPA for the benefit of the holders of Encumbrances. In light of such substantial consideration given by ScrapTrade, ScrapTrade shall be released from all potential or actual claims and Encumbrances related to successor liability.

22. This Court shall retain jurisdiction to enforce and implement the terms and provisions of the PPA, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith in all respects, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Sunbury Assets to ScrapTrade, (b) compel

delivery of the purchase price or performance of other obligations owed to the Trustee, (c) resolve any disputes arising under or related to the PPA, except as otherwise provided therein, (d) interpret, implement, and enforce the provisions of this Order, and (e) protect ScrapTrade against any Encumbrances against or in the Debtors or the Sunbury Assets, of any kind or nature whatsoever, whether attaching to the proceeds of the Sale subject to the terms of this Order or otherwise.

23. The terms and provisions of the PPA and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Trustee, the Debtors, their estates, and their creditors, ScrapTrade, and its respective affiliates, successors and assigns, any affected parties including, but not limited to, GRG, all persons asserting Encumbrances in the Sunbury Assets to be sold to ScrapTrade pursuant to the PPA, and any successor trustee appointed in these chapter 7 cases. The PPA shall not be subject to rejection or avoidance under any circumstances.

24. Any amounts that become payable by the Trustee to ScrapTrade or GRG pursuant to the PPA or this Order shall (a) constitute an allowed administrative expense claim pursuant to sections 503(b) and 507(a)(1) of the Bankruptcy Code in the Debtors' chapter 7 cases, and (b) be paid by the Trustee in the time and manner as provided in the PPA or this Order without further order of this Court.

25. The failure specifically to include any particular provisions of the PPA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the PPA be authorized and approved in its entirety.

26. The PPA and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto, in a writing signed by both parties, and in accordance with the terms thereof, without further order of the Court, provided that any

such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

27. Nothing contained in any order entered in the Debtors' chapter 7 cases subsequent to entry of this Order, shall conflict with or derogate from the provisions of the PPA or the terms of this Order.

28. Notwithstanding Bankruptcy Rules 6004(h), 6006(d), 7062, or 9014 or any other Bankruptcy Rule or Rule 62(a) of the Federal Rules of Civil Procedure, this Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution of this Order.

29. The provisions of this Order are nonseverable and mutually dependent.

30. To the extent that any provision of this Order conflicts with the PPA, this Order shall control.

Dated: Chicago, Illinois            ENTERED:
**JAN 2 8 2010**

                               _____
                               UNITED STATES BANKRUPTCY JUDGE