## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| KNIGHT-CELOTEX, LLC, an Illinois limited liability company, | ) ) | Case No. 09 B 12200 |
| | ) | |
| KNIGHT INDUSTRIES I LLC, a Delaware limited liability company, | ) ) | Case No. 09 B 12291 |
| | ) | |
| KNIGHT QUARTZ FLOORING, LLC, a Delaware limited liability company, | ) ) | Case No. 10 B 4210 |
| | ) | |
| Debtors. | ) | Judge Pamela S. Hollis |
| | ) | |
| In re: | ) | Case No. 10-10734 |
| | ) | Pending in the U.S. |
| JAMES A. KNIGHT, | ) | Bankruptcy Court for the |
| | ) | District of New Hampshire |
| Debtor. | ) | Judge Mark W. Vaughn |

## MEMORANDUM OPINION

This matter comes before the court on the motion of Bank of America, N.A. to
transfer venue of James A. Knight's bankruptcy case. Bank of America seeks to transfer
the venue of this bankruptcy case from the District of New Hampshire to the Northern
District of Illinois. Having reviewed the papers and heard the arguments of the parties,
the court finds that it has jurisdiction to determine the district in which this case should
proceed, and that such district is the Northern District of Illinois. Bank of America's
motion to transfer venue is granted.

## BACKGROUND

The facts set forth below are taken from the parties' papers. No party has requested an opportunity to offer evidence, or disputed the facts as recited.

James Knight ("James") was the manager and CEO of Knight Industries I, a limited liability company, and was its principal owner with an 88.546% membership interest. James also controlled Knight-Celotex, another limited liability company, through Knight Industries' 99.7% ownership.

Knight Industries also owns 46.845% of the outstanding Series A membership interests of Knight Quartz Flooring ("KQF"). James, through Knight Industries, has served as KQF's manager since KQF's formation.

In February 2009, Knight Industries resigned as manager of KQF, which then appointed Knight Quartz Flooring-Global LLC ("KQF-Global") as its new manager. KQF-Global is managed by Olney Partners LP, whose general partner is Cynthia Knight ("Cynthia"), Knight's wife.

On or about February 14, 2006, Bank of America extended $34,100,000 in financing to Knight Industries, Knight-Celotex, and certain of their affiliates (the "Loans"). The same day, James executed and delivered a guaranty in favor of Bank of America (the "KI Guaranty"). Pursuant to the KI Guaranty, James guaranteed payment of up to $1,300,000 of the principal amount of the Loans, plus, among other things, all interest and costs, legal expenses and attorney's fees. Under the terms of the KI Guaranty, James also consented to the exclusive jurisdiction and venue of any federal court located in Chicago, Illinois, and waived any *forum non conveniens* objections to such a venue. The KI Guaranty is governed by Illinois law.

- 2 -

Also on or about February 14, 2006, Bank of America extended $1,300,000 in financing to KQF in the form of a revolving credit facility (the "KQF Loan"). James executed and delivered a substantially similar guaranty for the KQF Loan (the "KQF Guaranty"). He again consented to the exclusive jurisdiction and venue of any federal court located in Chicago, Illinois, and waived any *forum non conveniens* objections to such a venue. The KQF Guaranty is also governed by Illinois law.

Knight Industries, Knight-Celotex and KQF (the "Illinois LLCs") defaulted under their respective loans by, among other things, failing to pay the principal and interest when due. Bank of America repeatedly demanded payment from James pursuant to the KI Guaranty and the KQF Guaranty. James did not make any payments under either the KI Guaranty or the KQF Guaranty.

On April 1, 2009, Bank of America sued James in the United States District Court for the Northern District of Illinois to enforce the KI Guaranty and the KQF Guaranty. That case is pending in the District Court before Judge Robert M. Dow, Jr. as Case No. 09 CV 2019 (the "District Court Litigation"). James appeared in the District Court Litigation, answered Bank of America's complaint, and opposed Bank of America's motion for summary judgment.

Knight Industries and Knight-Celotex filed petitions for relief under Chapter 11 of the Bankruptcy Code on April 6, 2009, in the Northern District of Illinois. The cases were converted to Chapter 7 on June 11, 2009.

On January 22, 2010, KQF filed a petition for relief under Chapter 11 of the Bankruptcy Code in the Eastern District of Louisiana. Shortly thereafter, Bank of

America sought transfer of KQF's bankruptcy case to the Northern District of Illinois by filing a motion to transfer in Knight-Celotex's bankruptcy case.

On February 2, 2010, this court transferred venue of KQF's bankruptcy case from the Eastern District of Louisiana to the Northern District of Illinois, where it is pending before the court as Case No. 10 B 4210. A copy of the order transferring venue was filed by Bank of America in KQF's Louisiana bankruptcy case the next day. On February 4, 2010, the Clerk of Court of the U.S. Bankruptcy Court for the Eastern District of Louisiana entered a letter on the docket, indicating that she had enclosed the complete electronic bankruptcy case file for transfer to the U.S. Bankruptcy Court for the Northern District of Illinois. The Louisiana bankruptcy case was closed the same day.

On February 16, 2010, this court converted KQF's bankruptcy case to chapter 7. Barry Chatz was appointed as the chapter 7 trustee for the Illinois LLCs.

James filed a voluntary petition for relief under Chapter 7 on February 23, 2010, in the United States Bankruptcy Court for the District of New Hampshire, Case No. 10-10734-MWV. He filed his Schedules and Statement of Financial Affairs on March 10, 2010.

James lived in New Hampshire as a graduate student in the 1980s, and returned as a resident in 2005. He met his wife in New Hampshire, at a time when she was a New Hampshire resident, and three of his four children attended public school in New Hampshire for a portion of their education. He first met with bankruptcy counsel in New Hampshire in September 2009.

An exhibit to Bank of America's motion to compel production of documents, filed on January 5, 2010 in the Knight-Celotex case, indicates that James spent the winter

of 2009-2010 in Idaho, and then traveled to Vancouver in February 2010 to attend the

Winter Olympics shortly before filing his personal bankruptcy case.

According to Schedule A, James owns no real property, although Schedule B

indicates that he has homestead rights in property located in Hanover, New Hampshire.

Schedule B does not indicate the location of his personal property.  He disclosed

significant joint federal tax refund claims on Schedule B, and received a post-petition

check from the IRS in the amount of $371,943.  He delivered this check to Olga L.

Bogdanov, his Chapter 7 trustee.

Additional tax refund claims remain pending, and a dispute may exist between

Bogdanov and Cynthia over ownership of the funds.  Resolution of the dispute, if not

agreed to by the parties, will depend on application of New Hampshire law.

Both Bank of America and Chatz are investigating various claims against James

relating to his conduct in connection with the Illinois LLCs. In a demand letter dated

December 29, 2009, Bank of America notified James of such claims, including:

> violations of state and/or federal securities laws, fraudulent and/or
> preferential transfer of corporate assets, breach of fiduciary duties, breach
> of duties owed to creditors, breach of the duty of good faith and fair
> dealing, negligence, unjust enrichment, mismanagement, corporate waste,
> material misrepresentations, misappropriation of information, usurping
> corporate opportunities, egregious misconduct, [and] conversion of the
> Bank's Collateral under 810 ILCS 5/9-315.01.

Ex. 4 to Bank of America's Motion to Transfer.

By a letter sent by his counsel on the same date, Chatz indicated that he may

assert nearly identical claims against Knight on behalf of the Illinois LLCs' bankruptcy

estates and unsecured creditors.

The letters outline the factual predicates underlying the potential causes of

actions, including assertions that James failed to create and maintain a standard, modern

and reliable accounting environment, in accordance with GAAP, including the use of sound internal controls and proper oversight of the accounting process and standards. This failure allegedly caused the Illinois LLCs to issue financial information that was materially misleading. Additional assertions include improper management, usurpation of corporate opportunities for personal benefit and transfer of money and other interests.

In response to Question 3(b) on its Statement of Financial Affairs, Knight Industries listed $231,035.34 of transfers made within 90 days before filing its bankruptcy petition to James, Knight, Inc. or Knight Industries, LLC (a different entity than Knight Industries I, LLC, which filed the bankruptcy petition). Knight Industries I also listed $130,079.50 in transfers made to James as an insider within one year before filing the bankruptcy case, and an additional $550,000 to Knight Quartz Flooring USA and $75,000 to KQF-Global.

Knight-Celotex made similar disclosures in its Statement of Financial Affairs: $210,000 of transfers made within 90 days before filing the bankruptcy petition to James or Knight Industries; $277,500 in transfers made to James as an insider within one year before filing the bankruptcy case; and $550,000 to Knight Industries.

Additionally, the Illinois LLCs' books and records show that Knight Industries paid The Wauregan Company, Inc. more than $1.3 million since 2007. Wauregan is wholly owned and controlled by James. Chatz's financial advisor indicated that there are no supporting invoices for these transfers, and no written agreements with Wauregan in the records.

## LEGAL DISCUSSION

Before the court can consider whether it is appropriate to transfer venue of James's bankruptcy case, it must address a jurisdictional objection. James contends that this court lacks jurisdiction to decide a motion to transfer venue of his bankruptcy case from New Hampshire to Illinois. For the reasons stated below, the court rejects James's argument and finds that it has jurisdiction to determine the proper venue of a case, pending in another district, when the debtor in that case is an affiliate of a debtor in an earlier-filed case pending in this district.

<u>This court, in the district where the petition filed first is pending, is the proper authority for determining the district in which the cases should proceed.</u>

Jurisdiction and venue are distinct legal concepts. Jurisdiction describes a court's inherent power to decide a case or controversy. Many courts may have jurisdiction to hear a dispute. The particular court that <u>should</u> hear the case is determined by venue. Venue is not litigated in bankruptcy cases as frequently as jurisdiction, although venue must be proper for any bankruptcy case to proceed in a particular district.

The relevant statutes when considering issues of jurisdiction and venue are found not in Title 11 of the United States Code, but instead in Part IV of Title 28, Jurisdiction and Venue. According to 28 U.S.C. § 1334(a), "the district courts shall have original and exclusive jurisdiction of all cases under title 11." The statute continues in relevant part:

(e)     The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction--

(1)     of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate; and

(2)     over all claims or causes of action that involve construction of section 327 of title 11, United States Code, or rules relating to disclosure requirements under section 327.

28 U.S.C. § 1334(e). James relies on these two subsections, as well as on 28 U.S.C. §

1409(2) [sic] and 11 U.S.C. §§ 301(a) and 303(b), in support of his contention that "the

New Hampshire bankruptcy court is the only court with jurisdiction over the Case, the

Debtor and property of the Debtor's estate." Objection at 4.

The court disagrees. Although section 1334(e) states that the district court in

which a case under title 11 is commenced or is pending has exclusive jurisdiction over

the property of the debtor, the property of the estate and all claims and causes of action

relating to section 327, neither this section nor any of the statutes cited by James give that

district court exclusive jurisdiction to decide all questions affecting that bankruptcy case.

This is clear from the second subsection of 1334(e), which provides the district

court in which a case is commenced or pending with exclusive jurisdiction over all claims

involving section 327, "rather than state court or some other district court." 1 Collier on

Bankruptcy ¶ 3.01[5] (16th ed. 2009). Reading this section using the rule of statutory

construction that "[w]hen the legislature expresses things through a list, the court

assumes that what is not listed is excluded," In re Ben Franklin Retail Store, Inc., 227

B.R. 268, 270 (Bankr. N.D. Ill. 1998), clearly the district court in which the case was

commenced or is pending does not have exclusive jurisdiction over claims other than

those involving section 327.

Consequently, one of the questions over which the district court in which a case is

commenced or pending does not have exclusive jurisdiction is the issue of venue when an

affiliate's bankruptcy case is pending in another district. The district court in New

Hampshire has exclusive jurisdiction over James's property, the property of his estate,

and all claims and causes of action relating to section 327. But other courts have

jurisdiction to decide issues that may affect James's bankruptcy case. This is also clear from section 1334(b), which provides that "the district courts shall have original <u>but not exclusive</u> jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." (Emphasis added.)

If the New Hampshire bankruptcy court's jurisdiction is not exclusive over the question of venue, the next question is whether this court has jurisdiction. Taking together all of the relevant statutes, this court finds that it does have jurisdiction to hear Bank of America's motion to transfer. The controversy presented is whether the venue of a bankruptcy case in which the debtor is affiliated with a debtor in a case pending before this court should be transferred. This court's jurisdiction over the dispute is grounded in the relationship between James and the Illinois LLCs. It is not a question regarding James's property, the property of his estate, or a claim relating to section 327 – such issues are within the exclusive jurisdiction of the New Hampshire bankruptcy court.

James argues that in order for this court to have jurisdiction to decide the proper venue for his bankruptcy case, his creditors should have filed either an involuntary petition against him in this district, or a motion to transfer venue in the New Hampshire bankruptcy court.

This court is exceedingly mindful that it may not write its own jurisdictional ticket. See <u>Zerand-Bernal Group, Inc. v. Cox</u>, 23 F. 3rd 159, 164 (7th Cir. 1994). Moreover, the court thoroughly respects the authority of our judicial colleague in New Hampshire. Nevertheless, James's argument that this court cannot decide the venue of his bankruptcy case will not succeed.

Section 1412, the statute addressing change of venue, states that "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." James argues that section 1412 "makes clear that the filing of a bankruptcy case in a district creates jurisdiction in that specific district, and only thereafter may the court having jurisdiction decide to send the case *to* another district." Objection at 6.

James's interpretation is a misreading of section 1412, and expands the language of the statute. Section 1412 does not restrict a court from transferring a case that is not pending before it. The statute also does not confer jurisdiction, let alone exclusive jurisdiction, on the district in which a case is commenced or pending. A bankruptcy court's jurisdiction over a case or controversy is provided by 28 U.S.C. § 1334, and section 1334(a) gives "the district courts . . . original and exclusive jurisdiction of all cases under title 11." Once jurisdiction – the inherent power to decide an issue -- is established, section 1412 provides the standard under which a court determines that a change in venue should be made. That standard is described as "in the interest of justice or for the convenience of the parties."

Although section 1412 describes when a case may be transferred, as with many Code sections, it does not describe the mechanics for accomplishing such a transfer. Since James's bankruptcy case is pending in New Hampshire, but this court also has jurisdiction to consider the question of venue of an affiliated debtor, confusion could arise as to which court is the appropriate authority. Thus, Fed. R. Bankr. P. 1014 was written to aid courts and parties by providing the proper procedure for transferring venue. For purposes of today's decision, the relevant section of Rule 1014 is found in part (b):

**(b)**    Procedure when petitions involving the same debtor or related debtors are filed in different courts

If petitions commencing cases under the Code are filed in different districts by or against (1) the same debtor, or (2) a partnership and one or more of its general partners, or (3) two or more general partners, or (4) a debtor and an affiliate, on motion filed in the district in which the petition filed first is pending and after hearing on notice to the petitioners, the United States trustee, and other entities as directed by the court, the court may determine, in the interest of justice or for the convenience of the parties, the district or districts in which the case or cases should proceed. Except as otherwise ordered by the court in the district in which the petition filed first is pending, the proceedings on the other petitions shall be stayed by the courts in which they have been filed until the determination is made.

Pursuant to Rule 1014, when petitions involving affiliated debtors are filed in different courts, a motion to transfer must be filed in the district in which the petition filed first is pending:

Federal Rule of Bankruptcy Procedure 1014(b) provides specific transfer procedures that apply when two petitions involving the same debtor are filed in different courts. In such cases, "on motion filed in the district in which the petition filed *first* is pending and after hearing on notice to the petitioners, the United States trustee, and other entities as directed by the court, the court may determine, in the interest of justice or for the convenience of the parties, the district or districts in which the case or cases should proceed" (emphasis added).

In re Salem, 465 F. 3rd 767, 776 (7th Cir. 2006).

Fed. R. Bankr. P. 1014(b) applies to four situations, including the one described in Salem. This case involves another such situation, since petitions were filed in different districts by a debtor and an affiliate.  James does not dispute that he is an affiliate of the Illinois LLCs, and the court recited sufficient facts in the Background section to indicate that these four debtors are affiliates.

Rule 1014(b) provides a bright-line test for determining the proper court in which a motion for change of venue should be heard when cases involving affiliates are pending

in different districts. See In re Reddington Investments Ltd. Partnership-VIII, 90 B.R. 429, 431 (B.A.P. 9th Cir. 1988). Without such a bright-line test, parties might not know which court, among those that have jurisdiction, should hear the motion for transfer. The Rule provides the parties and the courts with certainty, directing that the motion be "filed in the district in which the petition filed first is pending."

This allows the court in the first-filed district the opportunity to "determine, in the interest of justice or for the convenience of the parties, the district or districts in which the case or cases should proceed." Although the court could locate no legislative history describing why the first-filed district was chosen, a logical reason would be the assumption that the court with the first-filed petition is most familiar with the circumstances relevant to deciding a motion for transfer of venue. This may not be true in all cases, but it is true in the instant case.

Knight Industries and Knight-Celotex filed their petitions for relief under the Bankruptcy Code in this district more than a year ago. There are nearly 500 items on the combined case docket. This court has heard numerous motions and contested matters and conducted many hearings on various issues. It is far more efficient for this court, having had more than twelve months of experience with the Illinois LLCs, to hear a motion for transfer of an affiliated debtor.

That is exactly what transpired with the KQF bankruptcy case. KQF filed its petition for relief under the Bankruptcy Code in the Eastern District of Louisiana. Bank of America filed its motion to transfer venue in the Northern District of Illinois, and noticed the motion for hearing before this court. This court granted the motion and signed the order changing venue on February 2, 2010.

James suggests that the KQF motion, as well as the numerous published cases in which a court decided a motion to transfer venue and found that a case should be transferred from another district to the deciding court, are irrelevant because these courts assumed, without analysis, that they had jurisdiction to determine a motion to transfer under Rule 1014(b).  See Reddington Investments, 90 B.R. 429; In re Emerson Radio Corp., 173 B.R. 490 (D.N.J. 1994), aff'd, 52 F. 3rd 50 (3rd Cir. 1995) (transferring case from New York to New Jersey); In re Lawrence & Assoc., LLC, 2009 WL 1940561 (Bankr. D. Idaho July 2, 2009) (transferring case from New York to Idaho); In re Interlink Home Health Care, Inc., 283 B.R. 429 (Bankr. N.D. Tex. 2002) (transferring case from Delaware to Texas); In re Raytech Corp., 222 B.R. 19 (Bankr. D. Conn. 1998) (transferring case from Utah to Connecticut); In re Consolidated Companies, 113 B.R. 269 (Bankr. N.D. Tex. 1989) (transferring case from Georgia to Texas); In re Ryan, 38 B.R. 917 (Bankr. N.D. Ill. 1984) (transferring case from Kentucky to Illinois).  See also In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey, 149 B.R. 365, 368 (Bankr. S.D.N.Y. 1993) ("B.R. 1014(b) is unusual in that it creates a mechanism by which venue motions are determined by a court other than the court in which the case is pending.").

It is not correct, however, that all of these courts assumed without discussion that they had jurisdiction to hear a motion to transfer venue.  For example, the Emerson Radio decision was appealed to the Third Circuit.  In its decision, the panel noted the very same concern James raises today, and disposed of it:

> Although 28 U.S.C. § 1412, in and of itself, may not provide the authority for a district court to transfer to itself a case pending in another court, see, e.g., A.H. Robins Co. v. Piccinin, 788 F. 2nd 994, 1011 (4th Cir.), cert.

denied, 479 U.S. 876, 107 S. Ct. 251, 93 L. Ed. 2nd 177 (1986), Rule
1014(b) provides precisely such authority.

In re Emerson Radio Corp., 52 F. 3rd 50, 55 n.8 (3rd Cir. 1995) (emphasis in original).

James presented a novel and creative argument, but cited not one case in support
of his interpretation. Meanwhile, there are numerous decisions in which courts with the
first-filed case decided motions to transfer venue of a case pending in another district
under Fed. R. Bankr. P. 1014(b). The argument that this court lacks jurisdiction to
determine the proper venue for James's case because it does not "feel right" cannot hold.

For the reasons stated above, this court finds that it has jurisdiction to determine
the proper venue of a case, pending in another district, that involves an affiliate of a
debtor in an earlier-filed case pending in this district.

James's bankruptcy case should be transferred from New Hampshire to Illinois in the
interest of justice and for the convenience of the parties.

There is no dispute that New Hampshire is a proper district for James's
bankruptcy case, as he currently resides in the state. James cites In re Jolly, 106 B.R.
299, 301 (Bankr. M.D. Fla. 1989) as support for the "presumption that the Debtor is
entitled to file and retain the case in the venue in which he has resided." But the Jolly
court was merely acknowledging its "practice" of giving significant weight to the
debtor's residence. It cited no case law in support of this "practice." This court will give
the appropriate weight to James's residence when considering the "interest of justice" and
the "convenience of the parties," and is mindful that Bank of America must demonstrate
by a preponderance of the evidence that venue should be transferred. In re Peachtree
Lane Associates, Ltd., 206 B.R. 913, 917-918 (N.D. Ill. 1997), aff'd, 150 F. 3rd 788 (7th
Cir. 1998).

Although venue is proper in New Hampshire, it may be proper in more than one district. In a case decided last year, this court set forth the five factors to be considered when determining whether venue should be transferred to another district in the interest of justice or for the convenience of the parties, a decision that is committed to the sound discretion of the bankruptcy judge:

> (1) location of the creditors; (2) location of the debtor; (3) location of witnesses necessary to the administration of the estate; (4) location of the debtor's assets; and (5) which forum would provide for the most efficient and economical administration of the case.

In re B.L. McCandless L.P., 417 B.R. 80, 82-83 (Bankr. N.D. Ill. 2009). The court will discuss each of these factors in turn.

    1.    <u>Location of the creditors.</u>

In his bankruptcy schedules, James identified 22 creditors with total claims of $6,255,522. Only two of these creditors are located in New Hampshire: James's bankruptcy counsel and Dartmouth College, owed $7,500 for a donation.

Meanwhile, 10 of the 22 creditors are located in Illinois, and they hold claims in the amount of $6,147,357. This does not include the "unknown" amounts that may be owed to Chatz in his capacity as Chapter 7 trustee. According to a letter sent by Chatz's counsel to James on December 29, 2009, Chatz is investigating claims against James for which the damages may total in the millions of dollars.

Bank of America and Chatz will likely be very active creditors in James's bankruptcy case. Both parties already notified James that they intend to file litigation against him in connection with his operation of Knight Industries, Knight-Celotex and KQF.

James argues that New Hampshire will not be inconvenient for Bank of America since it is, as its name suggests, a national rather than a regional bank. Compare McCandless, 417 B.R. at 81 ("Fidelity is a regional bank with thirteen offices located exclusively in Allegheny and Butler Counties, in Pennsylvania."). The mere fact that Bank of America has offices in New Hampshire, however does not render it a convenient location for participating in James's bankruptcy case, as will be more fully discussed below in the section regarding location of witnesses.

James also contends that since this is a Chapter 7 case, rather than a Chapter 11, there are very few issues on which creditors will seek to appear and be heard. While this might be the situation in any one of the thousands of no-asset Chapter 7 cases heard by this court every year, James's bankruptcy case is unlikely to proceed without controversy. By way of example, there are approximately 20 creditors or interested parties who have appearances on file in the Illinois LLC bankruptcy cases, which are Chapter 7 cases. They are litigating issues different from those heard in a Chapter 11 case, but they are litigating nonetheless.

The court finds that the location of the creditors weighs in favor of transferring venue from New Hampshire to Illinois.

2.      Location of the debtor.

James resides in New Hampshire, and chose that district for his bankruptcy filing. The court acknowledges the presumption given to his choice, based as it is on his residency in New Hampshire. While New Hampshire may be James's legal residence, however, the court notes that he does not always reside there. Papers filed in this court indicate that James spent the past winter in Idaho, and then traveled to Vancouver in

- 16 -

February 2010 to attend the Winter Olympics. In light of these extended travels, it stretches credulity to give credence to a claim that Chicago is inconvenient, or to give too much weight to James's legal residence in New Hampshire.

Moreover, James has done a significant amount of business in Illinois. According to his response to Question 18 in his Statement of Financial Affairs, James was an officer, director, partner or managing executive, or owned 5 percent or more of the voting securities, of approximately 24 entities in the past 6 years. Fourteen of those entities are located in the Northern District of Illinois.

Additionally, James signed the KI Guaranty and the KQF Guaranty, both of which included forum selection clauses limiting litigation to "courts having situs in the City of Chicago, Illinois." In McCandless, this court found that although the debtor's limited partners resided in the Northern District of Illinois, the debtor had "agreed to jurisdiction in Pennsylvania when dealing with its largest creditor. It is disingenuous now to claim that transfer to Pennsylvania would be inconvenient." 417 B.R. at 83.

James attempts to distinguish McCandless by highlighting the differences between a limited partnership in Chapter 11, such as in McCandless, and an individual in Chapter 7, as in his personal bankruptcy case. "[T]he last thing this Debtor desires is more litigation with the Bank. A chapter 7 case is a symbolic white flag of surrender. The Debtor is making full disclosure, handing his assets to the Trustee and seeking a fresh start." Objection at 12.

Yet in the next paragraph, James wants to have his cake and eat it too. He argues that transferring venue will disrupt the attorney-client relationship, requiring him to retain

new counsel who James will have to locate and pay (apparently ignoring the fact that he was represented ably in this dispute by Chicago attorneys).

James cannot have it both ways. Is he turning in his assets and walking away, as do most individual Chapter 7 debtors? If so, he hardly needs much in the way of ongoing legal representation. But if he is an active participant in this bankruptcy case, developing a relationship with Chicago counsel and traveling "to proceedings in the remote venue," then Chapter 11 cases can be given more weight as precedent.

James urges the court to place little if any weight on the forum selection clause in his guaranties, trotting out a parade of horrors that could ensue from such reliance: Individual Chapter 7 debtors dragged to Delaware by credit card companies! Competing forum selection clauses in contracts with different creditors! While these are seductive arguments, they are not persuasive.

First, the court is not relying exclusively on the forum selection clause in the guaranties. After all, "the filing of a bankruptcy case is not a suit or action relating to the loan." McCandless, 417 B.R. at 83.

Next, James asks the court to assume that his forum selection clause was "part of the legal boiler plate imposed by [a] large financial institution…". Objection at 13. But James did not sign a form credit card agreement. He is a party to a multimillion dollar guarantee, presumably negotiated between his counsel and the bank. There is no danger of dragging thousands of individual debtors down a slippery slope to Delaware by acknowledging this particular forum selection clause, signed by a well-educated and experienced businessman.

Moreover, James's comment that "[t]here is no reason to inconvenience or impair the rights of other creditors for the convenience of one creditor" rings false when just three pages earlier he wrote: "there are very few issues on which creditors will want to appear and be heard. Arguably, only the Bank will appear, given the track record of the past 12 months." There are no dueling forum selection clauses to sort out, disposing of that particular red herring.

The court finds that the location of the debtor weighs in favor of keeping venue in New Hampshire, but only slightly. James's residence in New Hampshire is counterbalanced by the significant amount of business activity he conducted in Illinois as well as the forum selection clause to which he agreed.

    3.    <u>Location of witnesses necessary to the administration of the estate</u>.

The witnesses necessary to the administration of James's estate will include James and Cynthia, who both reside in New Hampshire. To the extent there are any issues involving Bank of America, however, the bank contends that the employees responsible for managing James's guaranties work and reside in Illinois.

James indicated that he has lived in New Hampshire since 2005, but he signed the guaranties in February 2006. The guaranties give his address as c/o Knight Industries LLC, One Northfield Plaza, Suite 210, Northfield, Illinois, 60093. It is not surprising, therefore, that the employees who dealt with James are located in Illinois.

While Bank of America is a national institution, its employees are individuals who work and reside in one location or another. The bank is national, its employees are not. According to Bank of America, the employees that it would call as witnesses are located in the Chicago area. For example, the affidavit that Bank of America submitted

in support of the motion to transfer was from Michael J. Hammond, one of the employees

responsible for administering the bank's relationship with the Illinois LLCs. His office is

located in Chicago.

Bank of America lists several other witnesses who may be called in support of

claims against James: the Illinois LLC's case trustee's financial advisor, Lisa Rogers (a

former employee of Knight Industries) and Robert Wasielewski (Knight Industries'

former CFO). All are located in Illinois.

While these witnesses may also be called to testify in litigation brought in the

Illinois LLC bankruptcy cases, their relevance here is their necessity in the administration

of James's case. Considering the connections between James and the Illinois LLCs, there

is likely to be litigation brought in James's personal bankruptcy case that will require

evidence from witnesses familiar with the operation of the Illinois LLCs. The court will

not ignore that likelihood and focus only on the location, collection and liquidation of

assets, as James suggests.

Moreover, the location of the witnesses is a consideration for the court only as

much as it aids the court in determining whether transfer is "in the interest of justice or

for the convenience of the parties." The question is not whether transfer will benefit the

administration of James's bankruptcy case alone, but whether it will be more convenient

for all parties. Bank of America notes that the witnesses it has identified are relevant in

both James's personal case and the Illinois LLCs' cases already pending here. Those

witnesses are located in Chicago, and their presence here weighs in favor of bringing all

four bankruptcy cases together in the same venue.

The court finds that the location of the witnesses weighs in favor of transferring venue from New Hampshire to Illinois

4.      Location of the debtor's assets.

According to his Schedule A, James owns no real property.  His personal property includes bank accounts, securities, two motorcycles and the tax refund claims, although Schedule B does not indicate where those assets are located.  As Bank of America notes, these assets can be administered either in New Hampshire or in Illinois.  Nevertheless, the location of James's assets weighs in favor of keeping venue in New Hampshire.

5.      The most efficient and economical administration of the case.

Of the four factors discussed above, two weigh in favor of transferring venue to the Northern District of Illinois, and the other two lend support to keeping James's bankruptcy case in New Hampshire. The deciding factor will be which venue would provide the most efficient and economical administration of the case.  For the reasons stated below, this factor weighs strongly and clearly in favor of transferring venue to the Northern District of Illinois.

James argues that since his case is an individual Chapter 7 case, significant substantive and procedural differences distinguish it from a corporate Chapter 11 case.  It is true, as he points out, that Section 341 meetings in Chapter 7 are generally "lightly attended" and that many creditors never even file proofs of claim.

But this argument cannot succeed.  First, this is no run of the mill individual Chapter 7 case, one in which the case trustee enters a no asset report immediately following the 341 meeting, no creditors are likely to appear and the debtor will never see the inside of the courtroom.  James wishes to distinguish his case from corporate Chapter

11 cases, but he himself created a complex network of affiliates, related debtors and limited liability companies.

Second, if the court should put less emphasis on the location of creditors and witnesses, as James urges because his case is an individual Chapter 7, then the court must put relatively more weight on the other factors in a venue decision. While the location of James's assets and his residence are important, so too must be the concern for efficient administration of the estate. If James's bankruptcy case is pending in a different district from the Illinois LLCs, we run a great risk of inconsistent rulings as well as of wasted resources by both the parties and the courts.

For example, James's case trustee (Bogdanov) and his wife Cynthia dispute ownership of a fairly large income tax refund due to James and Cynthia as joint filers. Cynthia claims a portion of the refund, and Bogdanov acknowledges that she will likely have to commence an action against Cynthia with respect to the refund. In the meantime, Illinois LLC trustee Chatz and Bank of America contend that neither Bogdanov nor Cynthia are entitled to the refund, since the income upon which it arises allegedly was fraudulently transferred from the Illinois LLCs to Wauregan and then inappropriately to Knight.

What if Judge Vaughn in New Hampshire rules that the refund belongs to Cynthia, and this court later finds at the conclusion of a fraudulent transfer trial that neither James nor Cynthia are entitled to the refund based on a theory of constructive trust? James's financial affairs are so intertwined with the Illinois LLCs that inconsistent rulings between this court and Judge Vaughn are not just a factor to consider – they are of overriding importance.

James also argues that his New Hampshire case trustee is already appointed and "actively administering the Debtor's estate in New Hampshire. The Trustee is already in possession of assets, has already concluded the § 341 meeting and is the correct forum to resolve the marital and property law issues likely to arise." Objection at 14. However, once Bank of America filed this motion to transfer venue on March 8, 2010, proceedings in New Hampshire should not have gone forward:

> Except as otherwise ordered by the court in the district in which the petition filed first is pending, the proceedings on the other petitions shall be stayed by the courts in which they have been filed until the determination is made.

Fed. R. Bankr. P. 1014. In furtherance of this Rule's directive, Bank of America filed a notice of stay of proceedings in the New Hampshire court.

In other words, James is basing his argument on actions that should never have occurred, or should at least have been delayed pending resolution of the motion to change venue. If the court accepts James's argument, it is tantamount to condoning these actions – taking possession of assets, conducting and concluding the § 341 meeting – despite the stay in Rule 1014.

The court acknowledges that questions of New Hampshire marital and property law may arise, and that a New Hampshire federal judge will have more familiarity with such questions. But James is wrong that an Illinois trustee will require additional support to deal with New Hampshire issues. If a case trustee is called upon to take a legal position, he hires an attorney. Chatz can simply hire a New Hampshire attorney to handle questions of New Hampshire law, while his current attorneys continue to handle the remaining issues of law.

Moreover, as Bank of America explains, some of the most substantial issues that will likely arise in James's personal bankruptcy case concern his conduct in connection with the Illinois LLCs. Many of these issues have already been investigated by Chatz and his professionals, who have been involved with these cases for nearly a year. This court has developed a familiarity with the parties and a base of knowledge regarding the relevant disputes. It would be a more efficient use of the resources already committed to this dispute if James's bankruptcy case is transferred to Illinois.

The court finds that the most efficient and economical administration of the case would be achieved by transferring venue from New Hampshire to Illinois.

## CONCLUSION

For the reasons stated above, the court finds that it has jurisdiction to determine the district in which these cases should proceed. Having considered the five factors set forth in applicable precedent, as well as the interest of justice and the convenience of the parties, the court finds that the appropriate district is the Northern District of Illinois.

Bank of America's motion to transfer venue is granted and the bankruptcy case of James A. Knight shall be transferred from the U.S. Bankruptcy Court for the District of New Hampshire to the U.S. Bankruptcy Court for the Northern District of Illinois.

Date: **APR 2 7 2010**

PAMELA S. HOLLIS
United States Bankruptcy Judge

- 24 -